UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

ANDREW FINDLEY,                 :
          Petitioner,           :
                                :    Crim. No. 3:97cr230 (AHN)
v.                              :    Civ. No. 3:03cv1723 (AHN)
                                :
UNITED STATES OF AMERICA,       :
          Respondent.           :

<u>RULING ON PETITIONS FOR WRIT OF HABEAS CORPUS</u>
<u>PURSUANT TO 28 U.S.C. § 2255</u>

Petitioner Andrew Findley ("Findley") seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2255 to vacate, set aside and/or correct his June 23, 1999 conviction. Findley was convicted by a jury on five counts of conspiracy to possess cocaine and cocaine base in violation of 21 U.S.C. § 846; possession with intent to distribute and distribution of cocaine base in violation of 21 U.S.C. § 841(a)(1); and possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1). The court sentenced him to 360-months imprisonment on four counts and 240-months imprisonment on the fifth, with the sentences to run concurrently, and 10-years supervised release.

Findley has filed three separate § 2255 petitions challenging his conviction, each contending that his trial counsel provided constitutionally ineffective assistance.

-1-

His first petition [97cr230, doc # 173; 03cv1723, doc # 1], filed on October 6, 2003, argues that his trial counsel failed to conduct a proper investigation into possible defenses.  His second petition [doc # 202], filed on October 29, 2003, claims that his trial counsel's representation was compromised by (1) a conflict of interest; (2) counsel's fraud upon the court; and (3) counsel's abandonment of Findley during trial.  His third petition [doc # 183], filed on February 6, 2004, reiterates his ineffective assistance of counsels claims and seeks an evidentiary hearing.[1]

For the following reasons, an evidentiary hearing is unnecessary to resolve the claims Findley raises in his § 2255 petitions, and his motion for a hearing [doc #183] is DENIED.  Further, although Findley's three petitions raise various arguments in support of his ineffective assistance of counsel claim, that claim is procedurally barred because it was already considered on direct appeal.  But even if the court were to reach the merits, Findley cannot demonstrate that his trial counsel's alleged errors undermine the

---

[1] Findley's first and third § 2255 petitions were prepared with the aid of counsel.  His second petition, dated October 6, 2003 (the same day as his first petition was filed) but not filed with the court until October 29, 2003, was prepared pro se and does not refer to the arguments raised by counsel in his first petition.

court's confidence in his conviction, as <u>Strickland v.</u>
<u>Washington</u>, 466 U.S. 668 (1984) requires.  Thus, Findley's
petitions for a writ of habeas corpus [docs ## 173, 202,
183] are DENIED.

<u>FACTS AND PROCEDURAL BACKGROUND</u>

From May to November 1997, Findley was part of a
conspiracy to distribute cocaine and cocaine base ("crack
cocaine") in Bridgeport, Connecticut.  On November 19, 1997,
a federal grand jury returned a six count indictment against
Findley and five other persons, charging them with various
federal narcotics offenses.  The prosecution resulted from
an investigation of narcotics-dealing activity that included
the assistance of a confidential informant, tape-recorded
telephone calls, and numerous "controlled-buy" drug
transactions.

On September 30, 1998, the grand jury returned a
superseding indictment.  Count one charged Findley with
conspiracy to possess cocaine and crack cocaine in violation
of 21 U.S.C. § 846.  Counts two, three, and five charged
Findley with possession with intent to distribute and
distribution of crack cocaine in violation of 21 U.S.C. §
841(a)(1).  Count six charged him with possession with

intent to distribute cocaine in violation of 21 U.S.C. §
841(a)(1).

On June 23, 1999, after a three-day jury trial, a jury
returned verdicts of guilty against Findley on all counts.
On March 13, 2000, the court sentenced Findley to sentences
of 360-months imprisonment on counts one, two, three, and
six, and 240-months on count five, to run concurrently.  The
defendant filed a timely notice of appeal.

The Second Circuit affirmed the conviction on November
8, 2001.  See United States v. Doe #1, 272 F.3d 116 (2d Cir.
2001).  Findley petitioned for a writ of certiorari, which
the United States Supreme Court denied on October 7, 2002.
See Findley v. United States, 537 U.S. 851 (2002).

A.  Pre-Trial Proceedings

After his arrest, Findley was represented by court-
appointed attorney James Filan, who appeared only for the
initial presentment.  On December 2, 1997, Findley retained
Donald Richman ("Richman"), who began working on a proffer
agreement with the government.  On May 27, 1998, however,
Richman moved to withdraw as Findley's counsel.  As grounds
for withdrawal, Richman cited Findley's belief that Richman
was "in collusion" with the government.  He further stated
that "Mr. Findley doesn't trust me as his attorney and would

like to have a court-appointed attorney."  The court granted
Richman's motion to withdraw.

On July 2, 1998, CJA counsel Brian Stapleton
("Stapleton") was appointed to represent the defendant and
the court set jury selection for February 2, 1999.  Several
days prior to the scheduled jury selection, Stapleton moved
to withdraw as Findley's counsel, and in the alternative,
for a competency evaluation of Findley.  Stapleton's motion
stated, "since the inception of my relationship with Mr.
Findley, he has voiced an extremely aggressive distrust of
my role in this case," and "believes that I am an agent of
the government acting out my part in a large-scale
conspiracy designed to 'trick' Findley into being
convicted."  The motion further noted that "in our recent
conversations, the tone of Mr. Findley's communications has
evolved from initially being extremely aggressive to now
verging on uncontrollable violence . . . .  I have become
extremely concerned for my own physical safety while in Mr.
Findley's presence."

At a January 29, 1999 hearing on Stapleton's motion,
Findley responded by stating "Mr. Stapleton lied to me on
several occasions," and "if you're going to lie to me, I
can't trust you.  Because he's a liar, he's a compulsive

liar." The court noted that "Mr. Stapleton happens to be one of the most competent criminal defense lawyers in [the] area and you should consider yourself fortunate to be represented by Mr. Stapleton, but apparently you don't recognize that." Findley then complained that Stapleton had not given him discovery materials, an assertion which Stapleton stated was incorrect because he had, in fact, provided Findley with a "substantial amount of paperwork." The court credited Stapleton's account, and ordered Findley committed for a psychiatric examination to determine his competency to stand trial.

B. Competency Examination and Jury Selection

Findley was interviewed and examined on three separate occasions by psychologists at the Metropolitan Correctional Center in New York. The results of the psychological exam established that Findley's actions were consistent with malingering. The psychologists noted that his examination "indicated an attempt to feign cognitive deficits" and concluded that he was competent to stand trial.

On April 14, 1999 Findley filed a pro se motion to remove counsel. The motion alleged that defense counsel had not conferred with him sufficiently or conducted an adequate investigation of the government's case. At an April 29,

2000, hearing on the motion, Findley reiterated his belief
that Stapleton was lying to him.  Stapleton responded that
he had met with Findley on several occasions, had provided
him with discovery and logs of conversations, had given him
transcripts of wiretapped calls, and had given him a
description of the physical evidence of the alleged drug
transactions, the potential testimony of confidential
informants, and the content of relevant wiretap
conversations.  Stapleton added, "As your Honor knows, I've
handled several of these cases, I have considerable
experience in the trial of these cases and I have given Mr.
Findley my very candid estimation not only of how I think
this trial is going to play out, but what the result would
be, and I think what Mr. Findley's really saying is he
doesn't like what I'm telling him."  The court again
declined to credit Findley's claims and denied the motion to
remove counsel.

On June 15, 1999, the parties met for jury selection.
Stapleton once again moved to withdraw, noting that "it is
my very reasoned estimation that we don't have a defense,"
because "[w]e can't call a witness that contradicts the
substance of the statements made during those proffer
sessions [without making the statements admissible under the

terms of the agreement], and this has been explained to the defendant." Stapleton continued, "in response to this, the defendant has overtly threatened me." He added that Findley was "impossible to deal with," and that "he does not have a defense and refuses to listen to reason." Findley again told the court that Stapleton had not given him discovery, had not met with him enough, and had lied to him. Once again, the court credited the statements of Stapleton. The court declined to appoint Findley new counsel, however, stating that Findley would simply try to "manipulate the system again" with any new lawyer that was appointed.

C.   <u>Trial and Sentencing</u>

One week later, on June 21, 1999, the morning the trial was supposed to begin, Stapleton renewed his request to withdraw on the basis that Findley threatened and attempted to attack him the night before. According to Stapleton, he "went to visit Mr. Findley at the Bridgeport Correctional Center . . . to confer with him about [the] case, and the visit ended violently." He stated to the court that Findley had threatened to strike him, made gestures with his hands as if he was shooting Stapleton, and made threats against Stapleton's family. According to Stapleton, at one point Findley had to be restrained by three corrections officers

and dragged from the interview cell.  Findley denied the
events had taken place.  The court refused Stapleton's
request to withdraw, and ordered Findley's feet to be
shackled during trial.  Despite the court's order that
precautions be taken that the jury not see the restraints,
Findley deliberately positioned his legs in a manner that
exposed the shackles to the jury.  The shackles were removed
on the second day of trial after the court was satisfied
that Findley would act appropriately.

After the jury verdict, Findley moved for substitute
counsel.  The court granted the motion and appointed a
fourth attorney, Peter Shaffer ("Shaffer"), to represent
Findley for sentencing.  After the court imposed a total
effective sentence of 360-months, Shaffer moved to withdraw,
noting that Findley appeared intent on making a Sixth
Amendment challenge to counsel's effectiveness at
sentencing.  The court granted the motion and appointed a
new appellate counsel, Findley's fifth attorney.

D.  <u>Direct Appeal</u>

On direct appeal Findley claimed: (1) ineffective
assistance of trial counsel resulting from a conflict of
interest; (2) ineffective assistance of trial counsel
resulting from counsel's abandonment of Findley after he

refused to plead guilty; and (3) abuse of discretion by the court in denying numerous motions to appoint new counsel. Addressing the ineffective assistance claims, the government argued that under <u>Strickland v. Washington</u>, 466 U.S. 668, 688 (1984), no prejudice resulted from defense council's representation.  The Second Circuit agreed, noting that "Findley cannot satisfy the prejudice prong of the <u>Strickland</u> standard in light of the overwhelming evidence presented at trial against him."  <u>United States v. Doe #1</u>, 272 F.3d 116, 126 (2d Cir. 2001).  As for the abuse of discretion, the Second Circuit concluded that "the district court's denial [of numerous motions to appoint new counsel] was not an abuse of discretion, particularly in light of . . . our conclusion, based on the record, that Findley substantially and unjustifiably contributed to the conflict between himself and Stapleton."  <u>Id.</u> at 125.

<u>DISCUSSION</u>

Findley now seeks to vacate, correct, or set aside his sentence pursuant to 28 U.S.C. § 2255 on the grounds that he received constitutionally inadequate counsel.  Specifically, Findley claims that trial counsel (1) failed to make sufficient investigation into possible defenses; (2) was "burdened with a conflict of interest because of his

ethnical hatred of petitioner"; (3) committed fraud by lying
to the court; and (4) abandoned his client by failing to
move for suppression of evidence.  The government contends
that Findley's ineffective assistance of counsel claims are
procedurally barred, and that even if properly before the
court, they would fail because Findley has failed to meet
the Strickland standard.  The court agrees with the
government that Findley's claims are meritless.

     A.   Procedural Bar

     As a threshold matter, Findley's ineffective assistance
of counsel claims are procedurally barred because the Second
Circuit did or could have considered these issues on direct
appeal of his conviction and sentencing.[2]  The Second
Circuit has stated that "because requests for habeas corpus

_____

     [2] The court acknowledges that because Findley's judgment
became final on October 6, 2002, and his second habeas
petition was not filed until October 29, 2003, there is some
question of whether that petition is time barred.  Prisoners
satisfy the one-year deadline for filing a petition if they
hand the petition to prison officials before the deadline,
regardless of when the petition is received by the court.  See
Houston v. Lack, 487 U.S. 266 (1988).  The evidentiary
question of who bears the burden of proof as to when the
document was handed to prison officials, however, is an open
question.  See e.g., Johnson v. Coombe, 156 F.Supp.2d 273, 277
(S.D.N.Y. 2001); Torres v. Irvin, 33 F.Supp.2d 257, 270
(S.D.N.Y. 1998).  Nonetheless, the court need not address this
question because Findley's claims are procedurally barred on
other grounds, and because the claims raised in that petition
fail on the merits.

relief are in tension with society's strong interest in the finality of criminal convictions, the courts have established rules that make it more difficult for a defendant to upset a conviction by collateral, as opposed to direct, attack." Ciak v. United States, 59 F.3d 296, 301 (2d Cir. 1995). See also United States v. Frady, 456 U.S. 152, 165 (1982) ("An error that may justify reversal on direct appeal will not necessarily support a collateral attack on a final judgment") (internal quotation marks and citation omitted).

Specifically, "a § 2255 motion may not relitigate issues that were raised and considered on direct appeal." United States v. Perez, 129 F.3d 255, 260 (2d Cir. 1997). Nor may habeas petitioners "assert claims they failed to raise at trial or on direct appeal unless they can show 'cause' for the default and 'prejudice' resulting from it." Ciak, 59 F.3d at 302 (quoting Wainwright v. Sykes, 433 U.S. 72, 87 (1977)). "Together, these two rules mean that a prior opportunity for full and fair litigation is normally dispositive of a federal prisoner's habeas claim." Reed v. Farley, 512 U.S. 339, 358 (1994) (quoting Withrow v. Williams, 507 U.S. 680, 720-721 (1993)).

Findley's ineffective assistance of counsel claims based on insufficient investigation, conflict of interest, and abandonment, are barred on procedural grounds because the Second Circuit considered these claims on direct appeal and rejected them. See United States v. Doe #1, 272 F.3d at 126. On the other hand, Findley's ineffective assistance claim based on fraud is barred because Findley did not raise it on direct appeal and has not shown cause for failing to do so. See United States v. Campino, 968 F.2d 187, 190-91 (2d Cir. 1992) (holding that failure to raise a constitutional issue on direct appeal is itself a default of normal appellate procedure, which can only be overcome by showing cause and prejudice).

B.   The Merits of the Claims

But even if Findley's claims were not procedurally barred, they would fail on the merits. The law establishes a strong presumption that counsel provides effective assistance. See Strickland v. Washington, 466 U.S. 668 (1984). To overcome this presumption, a petitioner must make a two-part showing. See id. at 687. First, the petitioner must demonstrate that counsel's performance was deficient -- that is, errors were made of such serious magnitude that petitioner was deprived of the counsel

-13-

guaranteed by the Sixth Amendment.  See id.  Second, the
petitioner must show that there is a reasonable probability
that, but for counsel's deficient performance, the result
would have been different.  See id. at 694. It is with this
framework in mind that Findley's claims must be evaluated.

 i.  Failure to Investigate

  The crux of Findley's failure to investigate claim is
that trial counsel failed to sufficiently investigate the
case, which would have lead to the discovery of the
testimony of Eddie Smalls ("Smalls"), an associate of
Findley's who was allegedly familiar with Findley's
dealings.  This contention, however, is factually flawed.
Findley's assertions that counsel "did not mount any
investigation" and that the "entire period between the
appointment of counsel and trial was almost entirely filled
with attempts to be removed from the case or have new
counsel appointed," are contradicted by the record.

  Contrary to Findley's allegations, the record shows
that Stapleton did investigate the case by contacting the
government, obtaining discovery, and requesting and
receiving a range of other evidence.  Moreover, Stapleton's
affidavit makes it clear that, despite his efforts to obtain
information from Findley regarding potential defense

witnesses, Findley did not provide him with Smalls's name,
nor did Findley explain why Smalls or any other individuals
might have information to assist in the defense.  In fact,
on June 15, 1999, when the parties met for jury selection,
Stapleton noted before the court, in the presence of
Findley, that Findley had not identified any witnesses to
subpoena in his defense.  The record shows that Findley did
nothing to contradict this statement.

Nonetheless, even if Findley's claim that Stapleton
failed to investigate were true, it would still not be
sufficient to sustain a claim of ineffective assistance
because Findley does not satisfy the Strickland test.  In
the context of investigations, the first element of the
Strickland test requires that the petitioner demonstrate
that counsel failed "to make reasonable investigations or to
make a reasonable decision that makes particular
investigations unnecessary."  Id. at 691.  In order to
satisfy the second element, Findley must demonstrate that
the outcome of the trial or sentencing would have been
different if Smalls had testified.  See id.

Findley contends that Smalls's testimony would
contradict certain aspects of the testimony of one of the
confidential informants who was cooperating with the

government.  However, based on Findley's proffer of what
Smalls's testimony would have been, it is unclear how that
testimony would have assisted Findley's defense because it
appears that Smalls had no first-hand knowledge of the drug
transactions that were at issue.  Further, the informant
that Smalls's testimony supposedly would have contradicted
did not even testify at Findley's trial.  Moreover,
Findley's sentence would not have been different if Smalls
had testified at the sentencing hearing and contradicted the
government's witness because the court did not base
Findley's sentence on the testimony of the government's
witness.  As the record makes clear, the court calculated
the drug quantities for sentencing purposes on the evidence
adduced at trial and did not rely on the testimony of the
informant.  Thus, the informant's testimony did not impact
the sentence Findley received, and Smalls's testimony would
have had no effect on his sentence.  Consequently, Findley
has failed to satisfy the second prong of the Strickland
test and thus his petition fails on the merits.

       ii.  Conflict of Interest

       Findley also claims that Stapleton was "burdened with a
conflict of interest because of his ethnical hatred of
petitioner and his blinding anger because petitioner would

not plea [sic] guilty as instructed."  The government submits that there is no evidence in the record to corroborate these claims, and that the claims are without merit.  The court agrees.

The Second Circuit has delineated three levels of conflicts of interest in evaluating this type of Sixth Amendment claim: (1) a per se conflict requiring automatic reversal without a showing of prejudice; (2) an actual conflict of interest that carries a presumption of prejudice; and (3) a potential conflict of interest that requires a finding of both deficient performance by counsel and prejudice, under the standard established in Strickland. See United States v. Doe # 1, 272 F.3d at 125; see also Armienti v. United States, 234 F.3d 820, 823-24 (2d Cir. 2000).

Per se conflicts are limited to two instances: (1) where trial counsel is not authorized to practice law or (2) where counsel is implicated in the crime for which the defendant is on trial.  See Doe #1, 272 F.3d at 125. Neither of these instances are present or alleged here.

An actual conflict exists "when, during the course of the representation, the attorney's and defendant's interests diverge with respect to a material factual or legal issue or

-17-

to a course of action." <u>Armienti</u>, 234 F.3d at 824 (internal quotation marks omitted).  These circumstances are not present in this case.

A potential conflict of interest occurs when, under the <u>Strickland</u> standard, counsel's performance was so deficient as to deprive the defendant of the counsel guaranteed by the Sixth Amendment, and there is a reasonable probability that, but for counsel's deficient performance, the result would have been different.  <u>See</u> <u>Strickland</u>, 466 U.S. 668 (1984).  As noted, Findley's allegations do not establish any deficiency in counsel's performance that affected the outcome of trial or sentencing.

Further, no actual conflict arises from Findley's allegations that Stapleton told him that he had no choice but to plead guilty; that when he informed Stapleton of his intention to go to trial, Stapleton said "he was a dumb little Jamaican and that he should have stayed in Jamaica;" or that Stapleton was enraged at Findley's unwillingness to enter a plea of guilty.  While Stapleton, by affidavit, denies making any derogatory ethnic comments to Findley, such allegations, even if true, do not demonstrate an actual conflict of interest because they do not show the required divergence of interests.  Indeed, the record shows that

-18-

Stapleton methodically sought to present a valid defense, despite the many roadblocks Findley tried to create.  Even though Findley and Stapleton disagreed as to certain aspects of Findley's defense -- including whether to plead guilty -- "a defendant cannot establish an actual conflict of interest merely by expressing dissatisfaction with [the] attorney's performance."  United States v. Moree, 220 F.3d 65, 71 (2d Cir. 2000) (quoting United States v. White, 174 F.3d 290, 296 (2d Cir. 1999)).

iii.  Fraud

Findley claims that Stapleton's conduct during the trial constituted a fraud on the court.  Specifically, Findley says that Stapleton lied to the court about the documentation he gave to Findley, his doubts as to Findley's mental competency, and that he attempted to assault Stapleton at the Bridgeport Correctional Center.  Findley asserts that Stapleton committed this fraud "in order to use the court system to punish and harass his client, because of his ethnical hatred . . . ."

As with Findley's conflict of interest claim, there is simply no evidence in the record, other than Findley's own unsupported allegations, of any fraud committed by Stapleton.  Further, even if Findley's claims were true,

that would still not demonstrate the resulting prejudice that is necessary to satisfy the second element of Strickland, without which Findley's claim fails as a matter of law.

iv.  Abandonment

Finally, Findley claims that Stapleton abandoned him by failing to move to suppress certain wiretap evidence on minimization grounds.  Findley, however, presents no evidence that even suggests that the minimization requirements were ignored in this case.  On the contrary, the record shows that the Assistant United States Attorney (AUSA) who oversaw the wiretap confirmed that all standard minimization procedures were followed.  There is simply no evidence that there were viable grounds for a successful suppression motion.  Further, even if Findley's contention that Stapleton failed to seek suppression of certain evidence were true, Findley has not demonstrated that any such failure prejudiced the outcome of his trial. Therefore, under Strickland, the abandonment claim must fail.  See Doe #1, 272 F.3d at 126.

CONCLUSION

For the foregoing reasons, Findley's motion for an evidentiary hearing [doc # 183] and petitions for a writ of

habeas corpus [docs ## 173, 202, 183] are DENIED.  Because
Findley fails to make a substantial showing of the denial of
a constitutional right, a certificate of appealability shall
not issue.  See 28 U.S.C. § 2253 (a)(2).

So ordered this 11th day of July, 2006, at Bridgeport,
Connecticut.


_____/s/_____
Alan H. Nevas
United States District Judge